IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DEWALT,<br>    Plaintiff,<br><br>vs.<br><br>THE CITY OF ERIE,<br>ANDREW ZIMMERMAN,<br>and PENNSYLVANIA ELECTRIC CO.<br>    Defendants. | C.A. No. 24-2 Erie<br><br>District Judge Susan Paradise Baxter |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

### A.     Relevant Procedural History

Plaintiff John DeWalt initiated this action by filing a complaint on January 3, 2024, against Defendants Pennsylvania Electric Company ("Penelec"), the City of Erie ("Erie" or "the City"), and Andrew Zimmerman ("Zimmerman"). Plaintiff subsequently filed an amended complaint against the same Defendants on March 29, 2024 [ECF No. 18], which is the operative pleading in this case. In his amended complaint, Plaintiff asserts four counts against Defendants Erie and Zimmerman (collectively, "Erie Defendants"): Count I - violation of substantive due process; Count II - violation of procedural due process; Count III - violation of equal protection; and Count IV – promissory estoppel under Pennsylvania state law.[1]

The Erie Defendants have filed a motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Rule 56. [ECF

---

[1] Plaintiff also asserted the same causes of action against Defendant Penelec, which have been separately addressed by Memorandum Opinion and Order dated September 9, 2025 [ECF Nos. 47 and 48].

No. 19].[2] In their motion, the Erie Defendants advance five principal arguments: (1) Plaintiff's procedural and substantive due process claims fail to state claims upon which relief may be granted; (2) this Court lacks jurisdiction over what is, at bottom, a zoning dispute; (3) Plaintiff's Equal Protection claim must be dismissed because the complaint fails to plead a viable class-of-one theory; (4) the claims against Defendant Zimmerman in his official capacity are redundant of the claims against Defendant Erie and the claims against him in his individual capacity are barred by qualified immunity; and (5) Plaintiff's promissory estoppel claim is barred by governmental immunity under the Tort Claims Act. Plaintiff has filed a brief in opposition to the motion [ECF No. 29], to which the Erie Defendants filed a reply [ECF No. 39].[3] This matter is now ripe for consideration.

### B.    Relevant Factual History

Plaintiff owns a residential property located at 546 Lincoln Street (also previously identified by the dual address of 546 Lincoln Avenue/1704 W. 6th Street), Erie, PA 16505 ("the

---

[2] In support of their motion to dismiss, the Erie Defendants have attached several documents for the Court to consider, which, according to them, would convert their motion to a summary judgment motion. The documents consist of: (1) the Zoning Hearing Board decision, dated August 17, 2023; (2) Common Pleas Docket 2023-12145; (3) Zoning Appeal Notice; and (4) the affidavit of Jake Welsh. (ECF Nos. 19-2 to 19-5, respectively). However, the first three of these documents may be considered by the Court on a motion to dismiss under Rule 12(b)(6) without converting the motion to a motion for summary judgment. Specifically, the Zoning Hearing Board decision is "an undisputedly authentic document" that is "integral or explicitly relied upon in the complaint," while the Common Pleas Docket and the Zoning Appeal Notice are taken from the contents of the state court's docket, of which the Court may take judicial notice. See Grp. Against Smog & Pollution v. Shanango Inc., 810 F.3d 116, 127 (3d Cir. 2016), quoting Pension Ben. Guar. Corp. v. White Consol. Ind., Inc., 998 F.2d 1192, 1196 (1993) ("The Court may consider in connection with a Fed.R.Civ.P. 12(b)(6) motion, 'exhibits attached to a defendant's motion to dismiss if it is 'an undisputedly authentic document' and 'plaintiff's claims are based on the document"); Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014), quoting Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("the court may consider 'documents *integral to or explicitly relied* upon in the complaint' in connection with a 12(b)(6) motion") (emphasis in original); Orabi v. Attorney Gen. of the U.S., 738 F.3d 535, 537 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket"). Thus, the only document submitted by the Erie Defendants that is beyond this Court's purview on a 12(b)(6) motion is the affidavit of Jake Welsh, which the Court will not consider at this time.

[3] The parties have also filed a concise statement of material facts [ECF No. 21] and a counterstatement [ECF No. 30], in the event Defendants' motion is treated as one for summary judgment; however, the Court will disregard these documents as Defendants' motion will be addressed solely as a motion to dismiss under Rule 12(b)(6).

Property"). (ECF No. 18, at ¶ 33). The property is serviced by two gas meters, two water meters, separate furnaces, separate duct work for those furnaces, separate kitchens, separate living quarters and separate entrances. (Id. at ¶ 5). The electrical wiring of the Property is segregated by floor, each floor having its own service panel and electrical feed. (Id. at ¶ 7). As such, the Property was originally equipped with a two-space meter socket; however, the second meter was subsequently removed because the Property has only been occupied on a single floor. (Id. at ¶¶ 6, 8). Under prior zoning ordinances, two-family dwellings were permitted in the area, and the Property itself was once zoned accordingly; however, on or about October 14, 1998, the two-family use was converted into a single-family use and the City of Erie issued a zoning certificate designating the Property as a single-family dwelling. (ECF No. 19-2 at ¶¶ 2, 7).

In early 2023, Plaintiff determined that the Property's aging electrical system required upgrades due to safety concerns, including a frayed entrance cable, degraded insulation, and outdated four-circuit fuse boxes. (ECF No. 18 at ¶ 9). He obtained an electrical permit from Defendant Erie, outlining his plan to reinstall the second meter socket and bring the entire system up to current code standards. (Id. at ¶¶ 10-11). Plaintiff began and nearly completed the electrical work pursuant to the permit. (Id. at ¶ 12). However, Defendant Erie placed a stop work order on Plaintiff's residence, prompting Plaintiff to contact the Erie Defendants to request an administrative hearing regarding the stop work order (Id. at ¶¶ 12, 13; ECF No. 29-1-2); however, this request, as well as Plaintiff's request for a final inspection of the electrical work to complete the permitting process, were denied. (Id. at ¶¶ 14-15).

Plaintiff subsequently contacted Defendant Penelec to determine what could be done to get the electrical work approved and was advised that the work could be inspected by any properly licensed inspector. (Id. at ¶¶ 16-17). Thereafter, a properly licensed inspector performed

3

an inspection and certified that the work was completed to code. (Id. at ¶¶ 18-19). Penelec accepted this inspection and sent an employee to install the second meter; however, Defendant Zimmerman "without giving [Plaintiff] notice and opportunity to be heard before an impartial tribunal" appeared at Plaintiff's property and told the Penelec employee not to install the second meter. (Id. at ¶¶ 20-21).

Penelec ultimately did not install the meter "based upon a belief that the future use would violate zoning laws," prompting Plaintiff to apply for a zoning variance for the property to be commissioned as a two-family dwelling. (Id. at ¶¶ 30-31; ECF No. 19-2 at p. 1). A zoning board hearing was held to hear Plaintiff's request for a variance, at which Defendant Zimmerman appeared to contest the variance. (Id. at ¶ 32). After hearing, the board denied Plaintiff's request by unanimous vote. (Id. at ¶ 36; ECF No. 19-2, at ¶ 22). Plaintiff appealed the Zoning Hearing Board's decision to the Ere County Court of Common Pleas, and this action was commenced during the pendency of that appeal.

## II.     DISCUSSION

### A.     Substantive Due Process

"To establish a substantive due process claim under Section 1983, a plaintiff must prove that [he] was deprived of a protected property interest by arbitrary and capricious government action." Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). "[T]he core of the concept [of due process is] protection against arbitrary action" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).

Indeed, to preserve a Fourteenth Amendment substantive due process claim from dismissal, a plaintiff must allege sufficient facts in the complaint to establish that the defendant's conduct is "conscious shocking in a constitutional sense." Id. at 846-48. This is particularly true

in cases involving land-use disputes, like the present one, where the conscience-shocking standard is "designed to avoid converting federal courts into super zoning tribunals," Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004). Thus, "[i]n the land-use context, we look for evidence of corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group on the part of local officials." Button v. Snelson, 679 Fed. Appx. 150, 154 (3d Cir. 2017), citing Eichenlaub, 385 F.3d at 286. Government actions that are merely taken for an "improper purpose" or in "bad faith" do not meet the requisite standard. Johnston v. Dauphin Borough, 2006 WL 1410766, at *6 (M.D. Pa. May 22, 2006), citing United Artists Theatre Circuit, Inc. v. Warrington, PA, 316 F.3d 392, 400-02 (3rd Cir. 2003).

Here, Plaintiff essentially alleges that "Defendants intentionally sought to violate the Plaintiff's constitutional rights because of impermissible nepotism, favoritism and cronyism," and that "[t]he actions of the Defendants in refusing to refusing to honor the electrical permit issued and refusing to install the electrical meter and treating him differently from others similarly situated because of impermissible nepotism was a direct and proximate cause of the violation of [Plaintiff's] substantive due process rights." (ECF No. 18, at ¶¶ 51-52).

Plaintiff's claim of nepotism and/or cronyism arises primarily from allegations set forth in paragraphs 22-27 of the amended complaint. Specifically, Plaintiff alleges that Defendant Zimmerman's "arbitrary and capricious actions in this matter [were] motivated by his fellow city employee Jake Welsh," who allegedly "has family members living near the Plaintiff's property." (ECF No. 18, at ¶¶ 22-23). One of these alleged "family members," William Welsh, was observed taking pictures of Plaintiff's property in November 2019 (approximately 4 years prior to the conduct at issue in this case), and allegedly told Plaintiff's son, Aaron DeWalt ("Aaron"),

that he was forwarding the pictures "to his cousin who works in the zoning office" who would "use his authority to fine [Aaron]" for parking in the grass. (Id. at ¶¶ 23B-D, G). Approximately two days later, Plaintiff received a notice of violation from the City of Erie citing "the very same violations William Welsh stated he would forward to his cousin in the zoning office." (Id. at ¶¶ 23E-F). Plaintiff alleges further that "In the past these family members have held animosity towards the Plaintiff and have used their connections with the city employees to further their vendetta against [him]." (Id. at ¶ 24). Thus, Plaintiff alleges that, "upon information and belief it was these family members who contacted Zimmerman upon seeing the Penelec truck at [Plaintiff's] property," and allegedly caused "Zimmerman [to] improperly intervene [] with the installation of the second meter." (Id. at ¶¶ 26-27).

These allegations of nepotism and/or cronyism, even if true, are speculative at best, and the connection Plaintiff attempts to draw between the past animosity of Jake Welsh's alleged "family members" towards Plaintiff and the conduct of the Erie Defendants alleged in this case is not only tenuous, but falls far short of the conscious-shocking standard required to establish a substantive due process violation. As a result, the Erie Defendants' motion to dismiss this claim will be granted.

### B.   Procedural Due Process

Plaintiff's principal procedural due process claim states that his constitutional rights were violated when the Defendants "refused to honor the electrical permit issued by failing to provide notice and opportunity to be heard before an impartial tribunal." (ECF No. 18 at ¶ 61). He claims that his subsequent request for a hearing was ignored by Defendants. (Id. at ¶¶ 62-64).

To state a §1983 claim for violation of procedural due process, a plaintiff must allege (1) he was deprived of an individual interest that is encompassed within the Fourteenth

6

Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006), citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Critically, Plaintiff must have availed himself of available procedures, unless those procedures were "patently inadequate" or effectively denied. Alvin, 227 F.3d at 116.

Here, Plaintiff alleges a property interest in his Erie-based real estate, and a liberty interest in freedom from arbitrary government action. (ECF No. 18 at ¶¶ 59–60). The Erie Defendants counter that "Plaintiff has failed to allege that the City of Erie Defendants interfered with his ownership of the property, deprived him of the enjoyment of the property, or evicted, cited, fined or even prohibited the Plaintiff from using the property." (ECF No 20 at p. 6). But, that response misses the mark. The stop work order plainly restricted Plaintiff's use of his property [ECF No. 29-1]. More importantly, Plaintiff alleges that the stop work order was deficient in several respects. Specifically, Plaintiff alleges that the order was not properly served, was undated, and failed to contain the reasons for its issuance. Moreover, Plaintiff alleges that when he attempted to invoke his right to appeal the order, his requests were ignored by the City. Thus, Plaintiff alleges that he was deprived of his right to appeal the stop work order.

Nonetheless, the Erie Defendants argue that Plaintiff's hearing before the Zoning Hearing Board regarding his request for a zoning variance to commission the Property as a two-family dwelling, and his subsequent appeal of the denial of the requested variance to the Erie County Court of Common Pleas, provided him with an adequate post-deprivation procedure that satisfied his due process rights; however, this argument is both legally untenable and practically unsound. Simply put, a hearing before the Zoning Hearing Board regarding a zoning variance request

cannot substitute for the Board of Appeals' review of a stop work order under the City's Uniform Construction Code ("UCC").

First, the two boards serve distinct functions. The Board of Appeals exists to review technical compliance with the UCC for matters like building safety, structural integrity, and fire protection. It is comprised of architects, engineers, and contractors, all pointed for their expertise in construction standards. UCC §1503.61. The Zoning Hearing Board, by contrast, adjudicates land-use disputes - variances, special exceptions, and challenges to zoning ordinances. Its members are residents appointed by City Council. Zoning Code §1303-501. One board ensures buildings are safe; the other determines whether they align with zoning policy. These are not interchangeable roles.

Second, the remedies diverge. The Board of Appeals may grant extensions or UCC variances based on practical considerations such as availability of materials, professional delays, or equivalent safety measures. UCC §1503.5(g). The Zoning Hearing Board, meanwhile, weighs hardship, neighborhood impact, and conformity with zoning's "essential character." Zoning Code §1303-508.9. Plaintiff's zoning appeal can resolve whether his structure complies with single or multi-family uses. The Zoning Hearing Board cannot assess whether the stop work order was justified under the Construction Code.

Third, the processes differ materially. The Board of Appeals may decide appeals on documents alone unless a hearing is requested. UCC §1503.5(d). The Zoning Hearing Board, conversely, must hold public hearings with testimony, cross-examination, and formal findings. Zoning Code §§507.7, 507.11. Treating the latter as a substitute for the former would deny Plaintiff the streamlined review the UCC envisions, and the Erie Defendants offer no authority for such a sleight of hand.

Thus, at the pleading stage, the Plaintiff has adequately alleged that the City deprived him of a property interest without procedural due process. The complaint's allegations - a constitutionally cognizable interest, a deprivation, and a denied hearing - are sufficient to survive dismissal.

### C. Court's Jurisdiction Over "Zoning Dispute"

Plaintiff states that "It is well-established that United States District Courts do not have jurisdiction over the issue of whether a Plaintiff was entitled to a zoning variance…." Indeed, as noted earlier, the Court of Appeals has made clear that the filing of §1983 actions challenging land use decisions cannot be utilized to convert "federal courts into super zoning tribunals," Eichenlaub, 385 F.3d at 285. However, the stop work order at issue here - citing only §1503.5 of the Uniform Construction Code, with no reference to zoning violations - demonstrates that this case does not fit neatly into a purely zoning dispute. While the City asserts that zoning compliance was its true concern, the stop work order itself that ultimately commenced the action invoked no zoning provisions, demanded no zoning-related corrections, and followed none of the notice procedures required under the Zoning Code (or the Construction Code for that matter). That Plaintiff contested a zoning variance in a separate proceeding does not transform this into a zoning case. The Erie Defendants' motion to dismiss this matter for lack of jurisdiction will be denied accordingly.

### D. Equal Protection – Class of One

To state a claim for violation of equal protection under a "class of one" theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the different treatment. Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

9

"Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008). This requires a class-of-one plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Hankin Family P'Ship v. Upper Merion Twp., 2012 WL 43610 at *11 (E.D. Pa. Jan. 6, 2012), quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2nd Cir. 2006).

Additionally, "the rational basis standard for a 'class of one' claim sets a high hurdle for plaintiffs, requiring a showing of different treatment that is 'irrational and wholly arbitrary.'" Patterson v. Strippoli, 639 Fed. Appx. 137, 144-45 (3d Cir. 2016), quoting Eichenlaub, 385 F.3d at 286. Importantly, "[i]f the [challenged] state action is discretionary decision-making based on subjective, individualized assessment, it is not subject to a class of one challenge." Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591 (2008). "In such cases, the rule that people should be treated alike under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." Id.

Here, Plaintiff allegations fall far short of meeting the stringent requirements of a class of one equal protection claim. First, Plaintiff broadly alleges that "[t]he Defendants have treated the Plaintiff differently to similarly situated individuals" (ECF No. 18, at ¶ 69), but fails to identify any such individuals who "are alike in all relevant aspects." He simply alleges that "[t]he Defendants have refused to follow prior precedent and issue a zoning variance." (Id. at ¶ 70A). Then he goes on to allege that "[t]his is evidenced by the City of Erie providing a zoning variance to property with no unique characteristics simply to facilitate a sale. Yet refusing to provide a variance to [Plaintiff] even though his property contains unique characteristics that

would create an undue burden to alter. Despite having established precedent that properties such as [Plaintiff's] should be granted a variance." [Id. at ¶ 71]. Not only is this allegation difficult to comprehend, it actually works against Plaintiff's claim that he was treated differently than similarly situated individuals because, in his example, a variance was provided to a property "with no unique characteristics" while his Property "contains unique characteristics;" yet was denied a variance. Plaintiff's other allegations in support of this claim are similarly confounding.

In short, Plaintiff has failed to identify a single true comparator similarly situated in all relevant aspects and has further failed to demonstrate that the Zoning Board's actions were "irrational and wholly arbitrary." Thus, his equal protection claim will be dismissed.

### E.    Official Capacity Claims Against Defendant Zimmerman

The Erie Defendants have moved to dismiss Plaintiff's official capacity claims against Defendant Zimmerman, to the extent they are alleged, arguing that they are duplicative of Plaintiff's claims against Defendant Erie. The Court agrees.

Claims against municipal level officials named in their official capacity are indistinguishable from claims against the municipality that employs them. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent'"), quoting Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. 658, 690, n. 55 (1978). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. Because the City of Erie is already a party to this suit, Plaintiff's claims against Defendant Zimmerman in his official capacity, to the extent they are alleged, will be dismissed.

### F.    Qualified Immunity

11

In their motion, the Erie Defendants argue that the claims against them are barred by the doctrine of qualified immunity; however, in their brief, the qualified immunity argument is raised only as to the claims against Defendant Zimmerman, in his individual capacity. (ECF No. 20, at p. 14).[4] Thus, the Court will address qualified immunity only with regard to Defendant Zimmerman.

The Third Circuit has articulated a three-part framework to assess whether a municipal official is entitled to qualified immunity. First, a plaintiff must allege a violation of a statutory or constitutional right. Second, the right at issue must have been clearly established at the time of the alleged misconduct. And third, a reasonable official in the Defendant's position would have understood that the challenged conduct violated that right. Doe v. County of Centre, PA, 242 F.3d 437, 454 (3rd Cir. 2001), citing Rouse v. Plantier, 183 F.3d 192, 196–97 (3d Cir. 1999). The latter two prongs demand an "objective legal reasonableness" inquiry of an official's action, assessed in light of legal rules that were "clearly established" at the time the officials took the action. Id., quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987). Throughout the inquiry, the officials' subjective intent is irrelevant. Anderson, 483 U.S. 635 at 639.

Here, the Erie Defendants summarily contend that "Plaintiff's claims do not establish a violation of any of his clearly established rights by Defendant Zimmerman." (ECF No. 20, at p. 14; ECF No. 39, at p. 10). Since the Court has already determined that Plaintiff has sufficiently alleged a violation of his clearly-established procedural due process rights as a result of actions attributable to Defendant Zimmerman, the Erie Defendants' attempt to apply the doctrine of qualified immunity to shield Defendant Zimmerman from liability is without merit.

---

4 This is likely intentional as the Third Circuit has unequivocally stated, "[t]he doctrine of qualified immunity is unavailable to municipalities ... such as the City of Erie." Kirley v. Williams, 330 Fed. Appx. 16, 20 (3d Cir. 2009); see also Grant v. City of Pittsburgh, 98 F.3d 116, 126 (3d Cir. 1996).

### G.    Promissory Estoppel

The doctrine of promissory estoppel—or, as it is sometimes called, detrimental reliance—stands as "a shield against injustice, allowing courts to enforce promises that, though unmet by formal contract, have been relied upon to one's detriment." Peluso v. Kistner, 970 A.2d 530, 532 (Pa. Cmwlth. 2009) (citation omitted).

To prevail on such a claim, a plaintiff must show three things: (1) that the promisor made a promise they reasonably expected would spur action or forbearance; (2) that the promisee, in fact, acted (or refrained from acting) in reliance on that promise; and (3) that justice demands enforcement to avert harm. Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000). These elements are not mere formalities. Instead, they are "bulwarks against promissory estoppel's overextension" - doctrine that, if applied too loosely, risks swallowing whole the distinction between tort and contract. Peluso, 970 A.2d at 533.

Plaintiff urges the Court to find that all three elements are satisfied here. He contends that Defendant Erie promised he could proceed with his electrical upgrades - including the installation of a second meter – and that he, relying on that assurance, built the system to the City's specifications. Yet, when the time came for a final inspection, the City refused, leaving him with substantial costs and a home that Penelec could not properly energize.

The Erie Defendants have moved to dismiss this claim, arguing that it is "an improper attempt to plead a contract-type action for what is in effect a tort claim to circumvent governmental immunity under the Tort Claims Act, 42 Pa. C.S. § 8542 ...." (ECF No. 39, at p. 10). See, e.g., Panas v. City of Phila., 871 F.Supp.2d 370 (E.D. Pa. 2012) (holding that city was a

13

local agency under the Tort Claims Act entitled to broad immunity for intentional torts and negligent acts committed by its employees) (citing cases).[5] The Court agrees.

Notably, what Plaintiff describes is not a broken promise in the contractual sense. It is, rather, an alleged failure to fulfill a duty of care, precisely the stuff of negligence. The City, here, may have had an obligation to examine the site competently and issue permits without negligence; however, it breached that duty, and he suffered damages as a result. Such allegations, however artfully pleaded, cannot disguise the tort of negligent misrepresentation at its core.

That distinction matters. A Plaintiff cannot recast a tort claim as a contract claim to evade governmental immunity. Matarazzo v. Millers Mut. Grp., Inc., 927 A.2d 689, 693 (Pa. Cmwlth. 2007). The City's alleged "promise" was, at most, an assurance it would discharge its legal obligations under the UCC. But a promise to obey the law is no promise at all for estoppel purposes. See, Cornell Narberth, LLC v. Borough of Narberth, 167 A.3d 228, 239 (Pa. Cmwlth. 2017) (rejecting estoppel where reliance on sprinkler approvals "sounded in negligence, not contract"); Gallagher v. Lynch, 2012 WL 8704641, at *2 (Pa. Cmwlth. Aug. 21, 2012) (similar for sewage permits).

The City's actions, even if negligent, did not create a contract-like promise - and without one, governmental immunity bars the claim and it will be dismissed accordingly.

An appropriate Order follows.

---

5 This immunity under the Tort Claims Act is waived only for the enumerated acts of negligence under section 8542(b), such as vehicle liability or dangerous conditions of property owned by the local agency, none of which apply here.